No. 25-1648

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

——————————

UNITED STATES OF AMERICA,
APPELLANT

v.

JOSE MIGUEL PENA DE LA CRUZ,
DEFENDANT-APPELLEE

——————————

ON APPEAL FROM AN ORDER DISMISSING AN INDICTMENT,
ENTERED IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

——————————

OPENING BRIEF FOR THE UNITED STATES

——————————

LEAH B. FOLEY
UNITED STATES ATTORNEY

DONALD C. LOCKHART
ASSISTANT U.S. ATTORNEY
JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
1 COURTHOUSE WAY
SUITE 9200
BOSTON, MASSACHUSETTS 02210
(617) 748-3193

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF JURISDICTION ......................................................................... 1

STATEMENT OF THE ISSUE ................................................................................ 1

STATEMENT OF THE CASE .................................................................................. 2

SUMMARY OF ARGUMENT ................................................................................. 9

ARGUMENT ......................................................................................................... 10

I.      The district court erred in dismissing the indictment with prejudice ............ 10

        A.      Standard of review ................................................................................ 10

        B.      Settled precedent undermines the district court's ruling ..................... 10

CONCLUSION ...................................................................................................... 20

CERTIFICATE OF COMPLIANCE ..................................................................... 21

CERTIFICATE OF SERVICE .............................................................................. 22

ADDENDUM

# TABLE OF AUTHORITIES

## CASES

*Chafin v. Chafin*,
　568 U.S. 165 (2013) ............................................................................20

*Fed. Bureau of Investigation v. Fikre*,
　601 U.S. 234 (2024) ............................................................................20

*Food & Drug Admin. v. Wages & White Lion Invs*., L.L.C.,
　604 U.S.__, 145 S. Ct. 898 (2025) .........................................................15

*Morton v. Mancari*,
　417 U.S. 535 (1974) ............................................................................11

*Nieves v. Bartlett*,
　587 U.S. 391 (2019) ............................................................................15

*Rinaldi v. United States*,
　434 U.S. 22 (1977) ..............................................................................14

*Trump v. United States*,
　603 U.S. 593 (2024) .................................................................. 12, 15, 17

*United States v. Abdush-Shakur*,
　314 F. App'x 97 (10th Cir. 2008).............................................................14

*United States v. Arradondo*,
　483 F.2d 980 (8th Cir. 1973)..................................................................14

*United States v. B. G. G.*,
　53 F.4th 1353 (11th Cir. 2022)................................................................14

*United States v. Baltazar-Sebastian*,
　990 F.3d 939 (5th Cir. 2021) ..................................................... 11-12, 18

*United States v. Barrera-Landa*,
　964 F.3d 912 (10th Cir. 2020)...................................................... 11-12

*United States v. Bernard*,
　42 F.4th 905 (8th Cir. 2022)...................................................................15

*United States v. Davis*,
  487 F.2d 112 (5th Cir. 1973) ...................................................................14

*United States v. Hayden*,
  860 F.2d 1483 (9th Cir. 1988) ...............................................................14

*United States v. Kelley*,
  402 F.3d 39 (1st Cir. 2005) ...................................................................10

*United States v. Lett*,
  944 F.3d 467 (2d Cir. 2019) .........................................3, 11-12, 18-19

*United States v. Matta*,
  937 F.2d 567 (11th Cir. 1991) ...............................................................13

*United States v. Mujahid*,
  491 F. App'x 859 (9th Cir. 2012) ...........................................................14

*United States v. Oliver*,
  950 F.3d 556 (8th Cir. 2020) ...................................................................14

*United States v. Ortega-Alvarez*,
  506 F.2d 455 (2d Cir. 1974) ...................................................................14

*United States v. Pacheco-Poo*,
  952 F.3d 950 (8th Cir. 2020) ...................................................................11

*United States v. Raineri*,
  42 F.3d 36 (1st Cir. 1994) ................................................................. 13-14

*United States v. Sanchez*,
  25-cr-10065-WGY.....................................................................................3

*United States v. Soriano Nunez*,
  928 F.3d 240 (3d Cir. 2019) ...................................................................11

*United States v. Suazo*,
  14 F.4th 70 (1st Cir. 2021) ................................................................. 13-14

*United States v. Vasquez-Benitez*,
  919 F.3d 546 (D.C. Cir. 2019)..........................................3, 11-12, 18

iii

*United States v. Vavic*,
  139 F.4th 1 (1st Cir. 2025) ...................................................................10

*United States v. Veloz-Alonso*,
  910 F.3d 266 (6th Cir. 2018) ...............................................................11

*United States v. Villamonte-Marquez*,
  462 U.S. 579 (1983) .............................................................................20

## STATUTES AND RULES

8 U.S.C. § 1101 ........................................................................................2

8 U.S.C. § 1225(b)(2)(A) .......................................................................11

18 U.S.C. § 3141 ......................................................................................2

18 U.S.C. § 3231 ......................................................................................1

18 U.S.C. § 3731 ......................................................................................1

Fed. R. Crim. P. 48(a) ..................................................................... *passim*

## OTHER AUTHORITIES

3B Charles Alan Wright & Arthur R. Miller,
  *Federal Practice and Procedure* § 801 (4th ed. 2024) .................................. 14-15

iv

## STATEMENT OF JURISDICTION

The district court (Young, J.) had subject matter jurisdiction because defendant was charged with federal offenses. 18 U.S.C. § 3231. Following the government's June 19, 2025 notice that he would be removed from the United States on June 24, 2025 [GA: 23], the court entered an order on June 23, 2025 stating that "[u]pon [defendant's] deportation, the indictment against him is dismissed with prejudice" [GA: 23-24], over objections that dismissal should be without prejudice [JA: 46-49, 77-78; GA: 11-13, 19-21].[1] Defendant was removed on June 24, 2025. [JA: 83]. The government filed a timely notice of appeal on July 8, 2025. [JA: 83]. This Court has jurisdiction under 18 U.S.C. § 3731.

## STATEMENT OF THE ISSUE

The district court erred in dismissing the indictment with prejudice under Fed. R. Crim. P. 48(a) on the basis that it disagrees with the Executive Branch decision to remove defendant from the United States rather than prosecute him, contrary to Supreme Court and circuit court precedent. The Court should reverse and remand with instructions that the court (a) dismiss the indictment without prejudice, and (b) vacate its general order requiring notice prior to removal and automatic dismissal with prejudice upon such notice and removal.

---

[1] The joint appendix is cited as "JA:__", the government's addendum as "GA:__", and docket entries as "ECF__".

## STATEMENT OF THE CASE

On March 26, 2025, a federal grand jury in the District of Massachusetts returned an indictment charging defendant-appellee Jose Miguel Pena de la Cruz, a removeable noncitizen, with money laundering and money laundering conspiracy. [JA: 9-15]. On April 14, 2025, the Magistrate Judge ordered defendant released on conditions under the Bail Reform Act (BRA), 18 U.S.C. § 3141 *et seq*. [ECF 33-34]. Later that day, he was taken into the custody of the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), and detained at an ICE facility pending removal pursuant to the Immigration and Nationality Act (INA), 8 U.S.C. § 1101, *et seq*. [JA: 18-19].

At a May 1, 2025 status conference, defense counsel cited the ICE detention in orally moving to dismiss the indictment, and the district court provisionally ordered that ICE not remove defendant. [JA: 19-25].

On May 8, 2025, the district court issued a standing order posted on its website titled "ORDER for the PROPER HANDLING of JUDICIAL PROCEEDINGS," in which it stated:

> Whenever a Grand Jury sitting in this District shall return an indictment which is assigned to this Session, the defendant is subject to the orders of this Court including any Magistrate Judge so assigned. He or she shall not thereafter be subject in any manner to the custody of agents of Immigration and Customs Enforcement until the first of the following three events occur: 1) *the United States Attorney shall move to dismiss the charges pending in this session with prejudice* and this Court shall allow the motion, 2) the trial jury for these charges shall

2

acquit the defendant, 3) this Court shall enter a judgment and commitment order upon these charges after trial or plea.

The United States Attorney shall maintain a current list of defendants subject to the orders of this Court and shall insure that the agents of Immigration and Customs Enforcement are kept fully apprised of this list.

[GA: 1 (emphasis added)].[2]

In May 8 and 15 filings, the government argued that the standing order was contrary to the unanimous circuit court view—shared by seven circuits—that ICE may detain and remove federally-indicted defendants. [JA: 29-37, 40-45]. The government pointed out that these circuits all agree that "[d]etention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities," *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019), and that "[t]he BRA and the INA authorize the government to pursue both criminal prosecution and removal simultaneously, and there is no conflict between the detention-and-release provisions of the two statutes," *United States v. Lett*, 944 F.3d 467, 471 (2d Cir. 2019).

---

[2] The district court issued a similar order from the bench on May 1, 2025 in dismissing a separate case, *United States v. Sanchez*, 25-cr-10065-WGY, with prejudice. [ECF 45-2]. The government will move to stay briefing in *Sanchez* [Case No. 25-1534] pending the outcome of the present case.

Meanwhile, defense counsel filed a May 9 motion to withdraw his oral motion to dismiss, conceding it was not ripe. [JA: 38-39]. On May 13, the district court allowed the motion to withdraw with the caveat that "the order that the defendant shall not be deported shall stand until further order of this Court." [ECF 43].

On May 22, the district court treated the government's May 15 filing as a motion for reconsideration, which it granted in part. [GA: 2-3]. The court now ruled that its standing and case-specific orders were "both modified to permit . . . ICE detention [of removeable criminal defendants whose cases are assigned to this judge], provided that 1) such detainees shall **NOT** be deported until the conclusion of the federal criminal proceedings in the manner set forth in this Court's general order and 2) ICE shall facilitate the appearance of such detainee (to avoid any government silliness, this means ICE shall bring the detainee in a timely manner to Courtroom 18, John J. Moakley United States Courthouse, Boston) for all court appearances where the criminal defendant is permitted to be present." [GA: 2-3 (bold in original)]. Despite this partial modification, the court's May 8 standing order remained posted on its website unaltered. [JA: 46].

Critically for this appeal, the May 22 modified order retained the May 8 standing order's condition that ICE may not remove a defendant against whom the charges have not yet resulted in an acquittal or conviction unless "the United States

4

Attorney *shall move to dismiss the charges pending in this session with prejudice and this Court shall allow the motion.*" [GA: 1 (emphasis added)].

On May 27, the government again challenged the standing order, even as modified, as contrary to law. The government reiterated that ICE may not only detain but remove federally-charged defendants and that the court had no authority to condition removal on dismissal with prejudice. [JA: 46-49]. The government relied on the unanimous circuit court view that it had twice cited to the court—that ICE may detain and remove defendants regardless of a pending criminal case—and on a uniform body of case law making clear that requiring dismissal with prejudice under Rule 48(a) would be improper in these circumstances. [JA: 46-49].

At a May 29 hearing, the district court stated: "I'm taking no further action on this most recent brief [*i.e.*, the May 27 motion], because nothing's ripe, I'm satisfied with my orders and those orders stand." [GA: 5]. The government then argued that the lawfulness of the May 8 and May 22 orders was fully ripe for decision. [GA: 6-7]. The court disagreed: "The order stands." [GA: 7]. At this juncture, however, defense counsel said he concurred with the government both on ripeness and that the court should permit defendant's removal. [GA: 7-10].

The district court then relented on ripeness, at which point the government explained why the court had no power to block the removal of a defendant or to condition removal on the filing of a Rule 48(a) motion to dismiss the indictment, let

5

alone to insist on dismissal with prejudice. [GA: 11-13]. The court replied: "My order stands. You give me two business days['] notice when you plan to remove him and I will entertain this order [sic]." [GA: 13-14]. After discussing the serious nature of the charges and the law enforcement and grand jury resources devoted to the case [GA: 14-18], the court settled on the key point that it would reiterate in its later order dismissing the case with prejudice:

> What is unacceptable to this Court, and should be unacceptable, is this idea that somehow ICE is going to deport people who a grand jury has indicted, and only then, you tell me, only then need this Court either be informed or a motion made. I won't have it. It's inappropriate. None of the cases—none of the decided cases deal with a situation like this.

[GA: 18].

When defense counsel inquired whether the district court was still precluding removal, the court responded: "No, no, I've altered [the order] to this extent. I said, 'Give me two days['] notice that they're going to be deported and then we'll see what motion is filed.'" [GA: 19]. The government then argued that the court had identified no "statutory or constitutional authority" for barring removal of a defendant "until such time as an event occurs in a criminal case" and that instead it had "pointed to just policy considerations." [GA: 20]. The court responded: "You've made . . . that point." [GA: 20]. The following exchange then ensued:

> [Prosecutor]: Okay, so I—could I just ask, are you denying ECF 48, the [May 27] motion?
>
> THE COURT: I ruled on it.

6

[Prosecutor]: Oh, okay. So you have denied it?

THE COURT: No, no, I've now altered and said "Give me two days notice and I'll see if you make a motion to dismiss," if the United States Attorney makes a motion to dismiss.

[Prosecutor]: Right, and we're not going to be doing that, your Honor, because you don't have the power to make us—to force us to file a [Rule] 48(a) dismissal motion prior to removal.

THE COURT: I think, in these unique circumstances, this is an appropriate exercise of the Court's power. Thank you.

[GA: 20-21].

Later in the day on May 29, the district court issued a text order in which it distilled its operative directive as follows:

The parties wish to be heard on # 48 Motion for the Court to further modify its May 8 standing order. Court hears argument. Defendant joins in request that Court lift the order that bars the defendant's deportation. The Court orders: ICE may proceed with the defendant's deportation and must give the Court two business day's [sic] notice of the impending deportation.

[GA: 22]. Despite this order, the May 8 standing order remained posted on the district court's website. [JA: 77].

On June 9, the government alerted the Courtroom Deputy Clerk to the fact that the May 8 standing order remained posted on the district court's website in its original form despite the fact that the court had twice stated it was modifying not just its case-specific orders but also its standing order. [JA: 77]. The court did nothing to rectify the situation.

7

On June 13, the government moved the district court to clarify its May 22 and 29 orders and to vacate its May 8 standing order, which remained posted as of that day. [JA: 73-80]. Among other things, the government noted that the May 8 order was "in direct conflict with the May 22 and 29 orders." [JA: 73]. It also observed that the court's May 29 bench and text orders sent conflicting messages concerning whether the notice of impending removal should come from the U.S. Attorney's Office or ICE, and that it was unclear what the consequences of such a notice would be. [JA: 77-78]. In addition, it repeated that the court had no power to dismiss the indictment with prejudice merely if defendant were removed or if the government did not file a Rule 48(a) dismissal motion prior to removal. [JA: 78]. Although defense counsel stated he did not oppose clarification of the orders [JA: 78], the court took no action.

On June 19, the government filed a notice stating defendant would be removed on June 24. [GA: 23]. In that notice, the government explained that it was making a "good faith effort to comply with the Court's orders despite the unresolved [June 13] motion" seeking clarification of the points just discussed. [GA: 23].

On June 23, the district court issued the following text order:

> Pursuant to this Court's order in this case, the government has properly given notice that it will deport Mr. de la Cruz on Tuesday, June 24, 2025. Mr. de la Cruz presently has serious pending unresolved criminal charges facing him in this District. In light of the previous litigation concerning this defendant, the Court treats this notice functionally as a motion to dismiss the pending indictment without

8

prejudice in the interests of justice. The government has the power to dismiss a criminal case for any reason or no reason. As this Court has previously articulated herein, it is sophistry to both claim to be fully enforcing the law while at the same time quietly deporting a defendant to increase ICE[']s monthly catch limit. Upon Mr. de la Cruz[']s deportation, the indictment against him is dismissed with prejudice.

[GA: 23-24]. Thus, the court treated its modified standing order as automatically requiring dismissal with prejudice—permanently precluding prosecution for the offenses charged in the indictment—as soon as the government files the pre-removal notice that the order demands and removal occurs. Later the same day, the court denied the government's June 13 motion for clarification as moot. [ECF 57].

Defendant was removed from the United States on June 24, and thus the dismissal with prejudice took effect. [JA: 83]. This appeal followed.

As of the filing of this brief, the original May 8 standing order is still posted on the district court's website.

## SUMMARY OF ARGUMENT

The district court had no authority to create a system requiring the government to provide notice prior to a defendant's removal and pursuant to which the indictment is automatically dismissed with prejudice based solely on the receipt of such notice and made effective upon removal. That procedure is contrary to an unbroken line of circuit court decisions holding that the government may pursue prosecution and removal simultaneously; it is at variance with settled law that dismissal with prejudice under Rule 48(a) is reserved for rare cases where a defendant carries his

9

burden of showing the government has acted in bad faith or for an improper purpose; and it ignores the constitutional reality that the choice between prosecution and removal is plainly one for the Executive Branch to make. The Court should therefore reverse with instructions that the district court (a) dismiss the indictment without prejudice and (b) vacate the original and modified versions of its standing order.

## ARGUMENT

### I.    The district court erred in dismissing the indictment with prejudice

#### A.    Standard of review

The district court's system requiring pre-removal notice and automatically dismissing the indictment with prejudice based on such notice and removal presents a legal issue that is reviewed de novo. *Cf. United States v. Kelley*, 402 F.3d 39, 41-42 (1st Cir. 2005) (the decision to dismiss with or without prejudice under the Speedy Trial Act or the Interstate Agreement on Detainers Act is reviewed de novo when it implicates an "error of law"); *see generally United States v. Vavic*, 139 F.4th 1, 16 (1st Cir. 2025) (a claim that a discretionary ruling rests on an "'erroneous view of the law'" is reviewed de novo).

#### B.    Settled precedent undermines the district court's ruling

All seven circuits to address the issue have held that ICE has authority to detain and remove federally-indicted defendants regardless of the pendency of the federal criminal case and irrespective of release determinations made under the

10

BRA. *See United States v. Baltazar-Sebastian*, 990 F.3d 939, 944-47 (5th Cir. 2021); *United States v. Barrera-Landa*, 964 F.3d 912, 918-23 (10th Cir. 2020); *United States v. Pacheco-Poo*, 952 F.3d 950, 952-54 (8th Cir. 2020); *Lett*, 944 F.3d at 470-73; *United States v. Soriano Nunez*, 928 F.3d 240, 244-47 (3d Cir. 2019); *Vasquez-Benitez*, 919 F.3d at 552-54; *United States v. Veloz-Alonso*, 910 F.3d 266, 268-70 (6th Cir. 2018). Each of these opinions was unqualified and unanimous.

Following this deluge of decisions between 2018 and 2021, no court has ruled otherwise. It is easy to see why: "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective," *Morton v. Mancari*, 417 U.S. 535, 551 (1974), and "[h]ere, there is no statutory conflict between the detention-and-release provisions of the BRA and the INA," *Lett*, 944 F.3d at 470. Nothing in the BRA overrides Congress's directive in the INA that a removable noncitizen "'shall be detained' pending removal proceedings unless that alien is 'clearly and beyond a doubt entitled to be admitted.'" *Lett*, 944 F.3d at 470 (quoting 8 U.S.C. § 1225(b)(2)(A)). Moreover, because the "[d]etention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities," *Vasquez-Benitez*, 919 F.3d at 552, it follows that the government may "pursue both criminal prosecution and removal simultaneously" and that a court

11

cannot "order the Executive Branch to choose between criminal prosecution and removal," *Lett*, 944 F.3d at 471. *Accord Baltazar-Sebastian*, 990 F.3d at 945 ("Fundamentally, the BRA and INA concern separate grants of Executive Authority and govern independent criminal and civil proceedings."); *Barrera-Landa*, 964 F.3d at 919 (quoting these passages from *Lett*). Even the district court recognized that this is the "unanimous view of other circuit courts," while adding without explanation that it "d[id] not share" that view. [GA: 16].

More broadly, ICE's "detention of a criminal defendant alien for the purpose of removal does not infringe on the judiciary's role in criminal proceedings." *Vasquez-Benitez*, 919 F.3d at 552. Nor does it "offend separation-of-powers principles simply because a federal court, acting pursuant to the BRA, has ordered that same alien released pending his criminal trial." *Id.*; *accord Baltazar-Sebastian*, 990 F.3d at 946-47. A defendant's removal may lead to dismissal, but the decision to prioritize removal over prosecution is a quintessential Executive Branch judgment call. *See Trump v. United States*, 603 U.S. 593, 620 (2024) ("[T]he Executive Branch has 'exclusive authority and absolute discretion' to decide which crimes to investigate and prosecute").

Although the district court ultimately reversed itself in part and allowed ICE to detain and remove defendant, it nevertheless insisted that the government provide

12

pre-removal notice and that the invariable consequence of such notice and removal is dismissal *with prejudice* under Fed. R. Crim. P. 48(a). This was error.

As the government argued below [JA: 46-49, 77-78; GA: 11-13], the law is otherwise: "Customarily Rule 48(a) dismissals are without prejudice and permit the government to reindict within the statute of limitations." *United States v. Raineri*, 42 F.3d 36, 43 (1st Cir. 1994) (citing *United States v. Matta*, 937 F.2d 567, 568 (11th Cir. 1991)). In keeping with that presumption, this Court implicitly recognized the circumscribed nature of a district court's authority to deny a motion for dismissal without prejudice when it noted the chief purpose of the rule: "Rule 48(a) protects defendants from prosecutorial harassment." *United States v. Suazo*, 14 F.4th 70, 75 (1st Cir. 2021).[3] No such harassment has been alleged here, whether in the context of the oral motion to dismiss that was withdrawn [JA: 19, 23, 38-39] or otherwise.

---

[3] The *Suazo* defendant argued in the district court that "given his lengthy pretrial detention and the government's admission that it could not prove its case, due process required an acquittal or dismissal with prejudice [under Rule 48(a)] rather than a dismissal without prejudice." 14 F.4th at 72-73. The court disagreed and dismissed the case without prejudice, "giving the government the benefit of a presumption of good faith in its Rule 48(a) motion, which the court found [defendant] had not rebutted." *Id.* at 73. When he was later reindicted in a different district, this Court rejected his argument that this prosecution was barred by the Double Jeopardy Clause, while reasoning that "Rule 48(a) protects defendants from prosecutorial harassment" and that harassment claims are distinct from Double Jeopardy claims and may not be asserted in an interlocutory appeal. *Id.* at 75-76.

13

This Court's decisions in *Raineri* and *Suazo* track the Supreme Court's prior conclusions that: (1) "[t]he principal object of the 'leave of court' requirement [in Rule 48(a)] is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection"; (2) "[t]he salient issue . . . is not whether the decision to maintain the federal prosecution was made in bad faith but rather whether the Government's later efforts to terminate the prosecution were similarly tainted with impropriety"; and (3) courts should "not presume . . . bad faith on the part of the Government at the time it sought leave to dismiss the indictment against petitioner." *Rinaldi v. United States*, 434 U.S. 22, 30 & n.15 (1977).

*Raineri* and *Suazo* also align with the unanimous circuit court view that the government's Rule 48(a) decisions are presumed to be in good faith and that to obtain dismissal with prejudice a defendant bears the burden of rebutting that presumption with proof that it has acted in bad faith. *See United States v. B. G. G.*, 53 F.4th 1353, 1363-70 (11th Cir. 2022); *United States v. Oliver*, 950 F.3d 556, 562 (8th Cir. 2020); *United States v. Mujahid*, 491 F. App'x 859, 860 (9th Cir. 2012); *United States v. Abdush-Shakur*, 314 F. App'x 97, 99 (10th Cir. 2008); *United States v. Hayden*, 860 F.2d 1483, 1486 (9th Cir. 1988); *United States v. Ortega-Alvarez*, 506 F.2d 455, 458 (2d Cir. 1974); *United States v. Davis*, 487 F.2d 112, 118 (5th Cir. 1973); *United States v. Arradondo*, 483 F.2d 980, 983 (8th Cir. 1973); 3B

14

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 801 (4th ed. 2024). The government is aware of no circuit decision that has deviated from— or even questioned—this consensus.[4]

This time-honored construction of Rule 48(a) dovetails with the principles that "the Executive Branch has 'exclusive authority and absolute discretion' to decide which crimes to investigate and prosecute," *Trump*, 603 U.S. at 620, that a prosecutor's "decisions receive a presumption of regularity," *Nieves v. Bartlett*, 587 U.S. 391, 400 (2019), and that agencies such as DHS and ICE "are entitled to a presumption of regularity," *Food & Drug Admin. v. Wages & White Lion Invs.*, L.L.C., 604 U.S.__, 145 S. Ct. 898, 922 (2025).

After citing these governing standards below, the government argued to the district court that, should it file a Rule 48(a) motion, the court would be required to dismiss without prejudice absent extraordinary circumstances that were not present here; the mere removal of defendant, without more, did not supply a basis to dismiss with prejudice. [JA: 47-48]. If defendant reentered the country after removal and charges were reinstituted, the government continued, he would be free to contest

---

[4] In reversing the denial of a Rule 48(a) motion, the Eighth Circuit cited four examples of bad faith conduct that could warrant denial of such a motion: (1) "when there has been 'prosecutorial harassment,' including a pattern of 'charging, dismissing, and recharging' the defendant"; (2) "'acceptance of a bribe'"; (3) "'personal dislike of the victim'"; and (4) "'dissatisfaction with the jury impaneled.'" *United States v. Bernard*, 42 F.4th 905, 909 (8th Cir. 2022).

15

them at that time. [JA: 48]. But, the government noted, the Rule 48(a)-based case law forbids a court from effectively prejudging possible future litigation and from imposing a categorical rule that dismissal with prejudice is *always* required when a defendant is removed during the pendency of the criminal proceedings. [JA: 48].

In a five-sentence ruling, the district court rejected these arguments without addressing them or any of the cited cases, even though defendant himself had made no effort to carry his burden of showing the government had acted in bad faith or for some improper purpose:

> Mr. de la Cruz presently has serious pending unresolved criminal charges facing him in this District. In light of the previous litigation concerning this defendant, the Court treats this notice functionally as a motion to dismiss the pending indictment without prejudice in the interests of justice. The government has the power to dismiss a criminal case for any reason or no reason. As this Court has previously articulated herein, it is sophistry to both claim to be fully enforcing the law while at the same time quietly deporting a defendant to increase ICE[']s monthly catch limit. Upon Mr. de la Cruz['s] deportation, the indictment against him is dismissed with prejudice.

[GA: 23-24].

Nothing in the quoted passage supports the notion that the government has acted in bad faith or that there are other extraordinary circumstances that could warrant dismissal with prejudice. A fair reading of the ruling is that the district court ordered dismissal with prejudice under Rule 48(a) solely—or at least principally—because it disagrees with the Executive Branch decision to remove defendant rather than prosecute him. That construction of the court's order accords with what it said

16

at the May 29 hearing: "What is unacceptable to this Court, and should be unacceptable, is this idea that somehow ICE is going to deport people who a grand jury has indicted, and only then, you tell me, only then need this Court either be informed or a motion made. I won't have it. It's inappropriate." [GA: 18]. It also meshes with the following statement in the court's May 22 order: "In due course, the Court will enter a full opinion explaining its reasoning and pointing out that ceding prosecutorial discretion to ICE impairs the cherished and constitutionally guaranteed right of all Americans to adjudicate the facts in every criminal proceeding." [GA: 3].[5]

But if, as all circuits to address the issue have held, it is perfectly permissible for ICE to detain and remove a federally-charged defendant, it necessarily follows that such an action, standing alone, cannot constitute the sort of bad faith or exceptional circumstances that could warrant dismissal with prejudice. The district court's complaint that the government is "quietly deporting . . . defendant[s]" instead of "fully enforcing the law" [GA: 23-24] and that it is "ceding prosecutorial discretion to ICE" [GA: 3], is nothing less than a repudiation of the principle that "the Executive Branch has 'exclusive authority and absolute discretion' to decide which crimes to investigate and prosecute." *Trump*, 603 U.S. at 620. And to the extent the court intimated in its May 29 remarks that bad faith might be predicated

_____

[5] No such opinion ever issued.

purely on the government's failure to give the court advance notice of a defendant's impending removal—an untenable suggestion given that the "BRA and the INA authorize the government to pursue both criminal prosecution and removal simultaneously," *Lett*, 944 F.3d at 471—the court itself later acknowledged that "the government ha[d] *properly given notice*" of that removal in the present case. [GA: 23-24 (emphasis added)].

It also follows that the district court lacked authority to impose the scheme that its standing order, as modified, establishes. As an initial matter, the order ostensibly requires federal prosecutors to file a pre-removal notice in a criminal case when a separate executive agency, operating pursuant to separate legal authority, plans to take an action (removal) that is the result of separate, civil proceedings. *See Baltazar-Sebastian*, 990 F.3d at 945. But as the caselaw the government cited to the district court makes clear, ICE is a "different authorit[y]" that performs "separate functions." *Vasquez-Benitez*, 919 F.3d at 552. ICE is tasked with enforcing the INA, is not a party to the criminal proceeding, and thus is not subject to the jurisdiction of the district court in a criminal case. Worse, the district court's order treats such pre-removal notice as triggering an automatic dismissal of the indictment. As the government explained, however, the district court has no authority to require a pre-removal motion to dismiss because ICE may detain and remove federally indicted defendants regardless of a pending criminal case. [*Supra* 10-12]. By forcing

18

prosecutors to provide pre-removal notice, then treating that notice as a trigger for automatic dismissal, the court's standing order requires "the Executive Branch to choose between criminal prosecution and removal." *Lett*, 944 F.3d at 471.

In short, none of the district court's statements—whether in its May 22 or June 23 orders or at the May 29 hearing—suffice to sustain its judgment foreclosing any future prosecution of defendant for the crimes alleged in the indictment. Nor do these statements justify the court's general regime under which the government must provide pre-removal notice that invariably yields dismissal with prejudice upon removal. Moreover, defendant offered nothing to fill this vacuum. The Court should therefore reverse.

Finally, as of the filing of this brief, the district court's initial May 8 standing order, which prohibits ICE detention and removal of federally-indicted defendants, remains posted on the district court's website. To the extent it remains operative despite the district court's subsequent orders, it is plainly unlawful for the reasons already explained. The Court should thus direct the district court to remove the order from its website.

## CONCLUSION

For these reasons, the Court should reverse the district court's order dismissing the indictment with prejudice and remand with instructions that it (a) dismiss the indictment without prejudice and (b) vacate the original and modified versions of its standing order.[6]

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    /s/ *Donald C. Lockhart*
       DONALD C. LOCKHART
       Assistant U.S. Attorney

---

[6] Defendant's removal does not moot the case because if he reenters the United States the charges could be reinstituted but for the contested order. *See United States v. Villamonte-Marquez*, 462 U.S. 579, 581 n.2 (1983) (deportation of defendants whose convictions were reversed by a circuit court did not "remove the controversy" in part because if that decision were overturned and they "manage[d] to re-enter this country on their own they would be subject to arrest and imprisonment for these convictions."); *Chafin v. Chafin*, 568 U.S. 165, 173, 176 (2013) (noting that "a case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party'" and that in *Villamonte-Marquez* the case was not moot "even though the defendants had been deported . . . because [they] might 're-enter this country on their own' and encounter the consequences of our ruling"). Given this authority, defendant cannot carry his burden "of proving that this dispute is moot." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 245 (2024).

20

## CERTIFICATE OF COMPLIANCE WITH
### Rule 32(a)

**Certificate of Compliance with Type-Volume Limit,**
**Typeface Requirements, and Type-Style Requirements**

1.   This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,057 words (an opening brief may not exceed 13,000 words, a reply brief may not exceed 6,500 words), excluding the parts of the brief exempted by Fed. R. App. P. 32(f) (*i.e.*, the corporate disclosure statement, table of contents, table of citations, addendum, and certificates of counsel).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word version 2019.

 /s/ *Donald C. Lockhart*
DONALD C. LOCKHART
Assistant U.S. Attorney

Dated:  August 13, 2025

21

# **CERTIFICATE OF SERVICE**

I, Donald C. Lockhart, Assistant U.S. Attorney, hereby certify that on August 13, 2025, I electronically served a copy of the foregoing document on the following registered participant of the CM/ECF system:

Judith H. Mizner, Esq.
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210

/s/ *Donald C. Lockhart*
Assistant U.S. Attorney

No.  25-1648

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

### UNITED STATES OF AMERICA,
### APPELLANT

**v.**

### JOSE MIGUEL PENA DE LA CRUZ,
### DEFENDANT-APPELLEE

_____

### Addendum Table of Contents

1.    May 8, 2025 standing order [ECF 45-1] ...............................................GA: 01

2.    May 22, 2025 order [ECF 47] ...........................................................GA: 02

3.    Excerpt of May 29, 2025 hearing transcript [ECF 52] .........................GA: 04

4.    May 29, 2025 text order [ECF 49] ....................................................GA: 22

5.    June 23, 2025 margin order [ECF 56] ................................................GA: 23

6.    June 23, 2025 text order [ECF 56] ....................................................GA: 24

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**ORDER**

**for the**

**PROPER HANDLING**

**of**

**JUDICIAL PROCEEDINGS**

YOUNG, D.J.                                                    May 8, 2025

Whenever a Grand Jury sitting in this District shall return an indictment which is assigned to this Session, the defendant is subject to the orders of this Court including any Magistrate Judge so assigned. He or she shall not thereafter be subject in any manner to the custody of agents of Immigration and Customs Enforcement until the first of the following three events occur: 1) the United States Attorney shall move to dismiss the charges pending in this session with prejudice and this Court shall allow the motion, 2) the trial jury for these charges shall acquit the defendant, 3) this Court shall enter a judgment and commitment order upon these charges after trial or plea.

The United States Attorney shall maintain a current list of defendants subject to the orders of this Court and shall insure that the agents of Immigration and Customs Enforcement are kept fully apprised of this list.

**SO ORDERED.**

_William G. Young_
WILLIAM G. YOUNG
DISTRICT JUDGE

**GA: 1**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                  )
UNITED STATES OF AMERICA,         )
                                  )
                                  )
          v.                      )         CRIMINAL ACTION
                                  )         NO. 25-10106-WGY
JOSE MIGUEL PENA DE LA CRUZ,      )
                                  )
               Defendant.         )
_____)

YOUNG, D.J.                                        May 22, 2025

**ORDER**

The motion before the Court (ECF No. 45) is not truly a motion for clarification at all; actually it is a motion for reconsideration and – in one particular – it is correct. It does appear that, notwithstanding the pendency of federal criminal proceedings, under the Immigration and Nationality Act agents of Immigration and Customs Enforcement ("ICE") may, for lawful purposes and in a lawful manner, detain such person even though such person is ordered released from federal custody under the Bail Reform Act.

The contrary order in this case and this Court's general order issued on May 8, 2025 are both modified to permit such ICE detention, provided that 1) such detainees shall **NOT** be deported until the conclusion of the federal criminal proceedings in the manner set forth in this Court's general order and 2) ICE shall

**GA: 2**

facilitate the appearance of such detainee (to avoid any government silliness, this means ICE shall bring the detainee in a timely manner to Courtroom 18, John J. Moakley United States Courthouse, Boston) for all court appearances where the criminal defendant is permitted to be present. This modification fully harmonizes the two statutes, as the government itself acknowledges. In all other respects the orders of this Court (referred to herein) remain in full force and effect.

In due course, the Court will enter a full opinion explaining its reasoning and pointing out that ceding prosecutorial discretion to ICE impairs the cherished and constitutionally guaranteed right of all Americans to adjudicate the facts in every criminal proceeding.

**SO ORDERED.**

/s/William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

[2]

**GA: 3**

1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS (Boston)

No. 1:25-cr-10106-WGY-1


UNITED STATES OF AMERICA


vs.


JOSE MIGUEL de la CRUZ



* * * * * * * *



For Hearing Before:
Judge William G. Young


Status Conference


United States District Court
District of Massachusetts (Boston.)
One Courthouse Way
Boston, Massachusetts 02210
Thursday, May 29, 2025


* * * * * * *



REPORTER: RICHARD H. ROMANOW, RPR
Official Court Reporter
United States District Court
One Courthouse Way, Room 5510, Boston, MA 02210
rhr3tubas@aol.com

**GA: 4**

the 12th of August, with responses by the government on Tuesday the 26th of August.

Are those dates all satisfactory?

MR. LOCKHART:  Yes, your Honor.

MR. HANYE:  Yes, your Honor.

THE COURT:  All right.

Now that's what I normally do at an initial case management scheduling conference, Mr. Lockhart.  Now two matters, or two observations.

I, um, note for the record that ICE has brought Mr. de la Cruz, Pena de la Cruz, here.  Ms. Belmont said that was not necessary.  My order is only on proceedings where the defendant's presence is required, need he be brought in, and those would include, though not exclusively, motions to suppress, if any there be, and obviously trial.  It's just -- like any other defendant, it's just those hearings where constitutionally the defendant must be present.

Since you have favored me with your presence, let me say I'm taking no further action on this most recent brief, because nothing's ripe, I'm satisfied with my orders and those orders stand.  If the government sought to dismiss these cases, then of course they'd make a motion and then I would entertain it.  If the government sought to deport the individual, I expect we'd have some

**GA: 5**

notice, so that the matter can be heard and, um, the Court could enter a further ruling.  But for now, there's no reason for me to make any ruling.

I -- I don't want there to be any confusion, I'm happy to tell you my views about these matters, but, um, there's nothing really before me and, um --

MR. LOCKHART:  May I address those two points, your Honor?

THE COURT:  If you wish, you may.

MR. LOCKHART:  Thank you.

First of all, you said your order is framed only to require the presence of the defendant when his presence at the hearing would be "required," but the order actually says "permitted."  So you may want to at least tweak the order in that respect.  It says --

THE COURT:  You will understand -- and I appreciate that, you're quite right, we will treat it as "required."

MR. LOCKHART:  Okay.  So that logistical point aside, um, on the second point, we believe the matter is fully ripe right now because your current order is effectively barring ICE from removing a defendant unless and until something -- some particular event happens in the criminal case, and as we point out in ECF 48, that's just simply contrary to the law of --

**GA: 6**

THE COURT:  What about Judge Talwani's opinion in *Castillo*?

MR. LOCKHART:  I'm not familiar with her opinion in *Castillo,* your Honor.

THE COURT:  Well you should be.  I think I'm on sound ground.  The order stands.

MR. HANYE:  Your Honor, may I be heard?

THE COURT:  You may.

MR. HANYE:  Thank you.

The government's motion for further modification, which is Docket 48, um, I believe it reports that the defendant took no position as to the government's request.  I'd like to modify that, because I've read it more closely and I understand there are two requests.

One, is the government is asking for the Court to lift the order to the extent that prevents removal of my client while this case is pending.

THE COURT:  And I just denied that.

MR. HANYE:  I want to make clear though, your Honor, that we actually join in that request.  And that is based on, um, the understanding of persuasive case law from other courts of appeals -- although not binding, I acknowledge, but we don't have a First Circuit case directly on point, that essentially says the government is allowed to proceed on both tracks,

**GA: 7**

both with a criminal prosecution and then an indictment and --

THE COURT:  But of course, Mr. Hanye, that's precisely what I've allowed, I'm fully satisfied that they have every right to hold him and I accept Mr. Lockhart's drafting suggestion, which makes perfect sense.  I don't intend to burden them.

MR. HANYE:  Except that now my understanding of the immigration proceedings is that there is a final order of removal, which my client has not challenged or objected to in those proceedings, and so the Court's order barring deportation has now turned into an order of detention in this case or will have the same effect.  And so without the Court's order, ICE would certainly move to take the next steps to actually remove my client.  And then I think that's when the issue of dismissal and whether it's with or without prejudice becomes ripe.  And that was the issue that Judge Talwani addressed in *Castillo*.

So I certainly agree with Judge Talwani's ruling in that case.  The difference is that that defendant had already been deported, but here Mr. Pena de la Cruz is now being required to be detained despite the fact that the magistrate has ordered him released.

THE COURT:  Let me see if I understand, and,

**GA: 8**

Mr. Lockhart, I didn't mean to cut you off, and I did, and I apologize.

He's -- he's under a final order of dismissal -- of removal, and if, um, I were to modify my order, one would imagine that as soon as they can arrange a flight, he's gone.

MR. LOCKHART:  I think that's in all likelihood correct.

THE COURT:  All right.  Then the issue arises whether the charges will be dismissed without prejudice or with prejudice.  Again, no controlling law, but, um, various persuasive authority, all of which points out "unless there be extraordinary circumstances."

Now, um, do you want to be heard on that today or do you want to set -- because I agree with Mr. Hanye, that if, um, you intend to deport him, and as one of these cases say, "run the litigation risks," after he has been duly-indicted by a grand jury of American citizens, understood for money laundering, if now the determination has been made apparently by the immigration authorities, not the Chief Law Enforcement Officer, the United States Attorney, that he will be deported, if that's your position, then we'll hear that, perhaps not now, but at a time you'd like to be heard on that.

**GA: 9**

What do you say to that, Mr. Lockhart, would you like to be heard on that?

MR. LOCKHART:  I would like to be heard, and effectively being heard on ECF 48, our motion which --

THE COURT:  I understand.  I understand that you've raised it.

MR. LOCKHART:  Yes.

THE COURT:  Now I agree that the matter is appropriate to be heard.

Did you want to be heard right now?

MR. LOCKHART:  Yes, please.

THE COURT:  And, Mr. Hanye, you join in that?

MR. HANYE:  I join in the request to modify the order that currently prevents his deportation.  So to lift that portion of the order, yes.

MR. LOCKHART:  So the defense and the government effectively --

THE COURT:  Just wait a minute.

So, Mr. Hanye, what I'm going to resolve here is whether the charges against him are dismissed without prejudice, which the government insists is the proper result, or with prejudice, which I take it, from your point of view, you would argue that he be -- that the charges be dismissed with prejudice?

MR. HANYE:  That is the request, yes.

**GA: 10**

THE COURT:  And you want to be heard on that?

MR. HANYE:  Well I don't have any further argument, your Honor.

THE COURT:  Fine.  Very well.

All right, Mr. Lockhart, I'll hear you.

MR. LOCKHART:  So we think you're putting the cart before the horse in the sense that we are not going to move to dismiss under Rule 48(a) until and unless the defendant is removed.  At that time we will, in all likelihood, move the Court for dismissal without prejudice, and at that point --

THE COURT:  But you know the representation is that the executive is going to deport him after you have made -- after the United States Attorney has made the prosecutorial decision to, um, indict him and put him to trial, a trial which, unless he's deported, is going to take place in the ordinary course, in October, for serious charges of money laundering.

So you say you want to be heard on it, but you're not making the motion on it, so I don't have an issue before me, unless I alter the order with the idea that he's going to be deported, and I say, "Well I alter that to in effect set him at liberty in the country of origin."  I mean that's what will happen, he's going to be set at liberty.  The -- and then I'm going to

**GA: 11**

entertain dismissing the charges with prejudice or dismissing them without prejudice.

It -- I can't -- you want to be heard on some theoretical matter, but it's a matter that you're inviting, indeed you're instructing me to allow this to go forward.

MR. LOCKHART:  It's not theoretical at all, your Honor, with respect to our threshold contention that you cannot condition removal, as you have, on an event occurring in the criminal case, such as dismissal.  So the proper sequence of events, we believe, is for you to rescind that order and then, at that point, if the defendant is removed, we will then come back to you and move to dismiss without prejudice.

THE COURT:  All right.  Have you -- I really do want to hear your argument.  Have you made your argument?

MR. LOCKHART:  Um -- I have not yet developed the argument on the threshold position.

THE COURT:  Go ahead.  Go ahead and develop it.

MR. LOCKHART:  All right.

So consistent with the decisions of 7 circuits, which we've cited in ECF 48, ECF 45, and ECF 41, you lack the discretion to condition the detention and removal by ICE of a criminal defendant on some event

**GA: 12**

happening in the criminal case, which event may be dismissal under 48(a), acquittal after a jury trial, or the entry of a judgment of conviction, those are the three basic, um, events that I think your orders contemplate, um, prior to ICE being able to remove the defendant.

THE COURT:  That's correct.

MR. LOCKHART:  Once that order is rescinded, if it is rescinded, we fully expect that ICE will then remove the defendant.  But until that happens, we, the government, and the executive branch, need to retain the flexibility to decide whether to move forward, with a prosecution not being certain until the actual date of removal, that that removal will happen.  We think it will happen, but we cannot be forced, as it were, to move -- prior to removal, to move to dismiss the case.

THE COURT:  Well then the matter's not ripe, is it?

MR. LOCKHART:  No, the matter is fully ripe, because we are contesting your authority to have an order which bars ICE from removing defendants unless and until one of three events occurs, and that is right --

THE COURT:  I understand.  You make yourself clear.

My order stands.  You give me two business days

**GA: 13**

notice when you plan to remove him and I will entertain this order.  But let me be transparent on my reasoning here so that you can deal with it when that argument takes place.

The United States Attorney in this district is the Chief Law Enforcement Officer of the district, she holds that position by order of this court.  She was appointed as an Acting United States Attorney and no further executive action was taken, and the judges of this court have constituted her the Chief Law Enforcement Officer in this district.  Now she holds the entire discretion as to how to -- how to proceed here.

Let me recite what appears to be undisputed facts. Law enforcement agencies -- this is a money-laundering case, and as I understand the, um, gravamen of the indictment here, this is -- while the money allegedly laundered is drug money, and the very life's blood of the drug trade depends upon laundering large sums of money.  Mr. Pena de la Cruz is innocent of those charges.  But the charges themselves are enormously serious.  And day after day, your colleagues, Assistant United States Attorneys, stand in this court and argue for severe sentences for individuals charged and convicted of those crimes for perfectly sensible reason, that without the laundering of large sums of money, the

**GA: 14**

trade is much more difficult to pursue.

Just look at the last week of this Court's sittings and the sums of money involved in the drug trade, only in this session of the court.  Your colleagues have argued what a severe public crisis this is.  And so I imagine, without knowing, that the law enforcement officers have expended time and money and resources to build a case against Mr. Pena de la Cruz.

After that, under the authority of this United States Attorney, or her predecessor, these matters were presented to a grand jury of United States citizens.  That's -- that's a constitutionally-required, um, device to involve the public.  That is an expression of direct democracy.  This Court takes that very seriously.  A grand jury that I have not inquired, I do not know, but was liable to sit for 18 months in the development of criminal cases, and that grand jury returned an indictment against Mr. de la Cruz, that grand jury voted, at least by majority vote, that there was probable cause -- the citizens of this district, American citizens voted that there was probable cause to believe that Mr. de la Cruz was guilty of these money-laundering charges.

He was duly arrested and as is his right, he came before a magistrate judge of this court.  And the

GA: 15

magistrate judge, after careful consideration -- and I have looked into this, decided that he would be released into society on sufficient terms to ensure that he would appear for trial.  So that involved her efforts and her careful judicial determination.  And then ICE swoops in and picked him up.

And, as you have properly pointed out to this Court, and as is the unanimous determination of the circuit courts who have considered the issue, the provisions of the Act under which ICE operates do run parallel and separate from the constitutional provisions under which the Court operates and under which he was set at liberty.

This has the pernicious effect that if we really wanted to bring someone to trial, the thumb ought be placed on the scales, not as is required by the Bail Reform Act, but that we ought hold people in custody -- at least noncitizens -- unlike citizens, we ought hold noncitizens in custody, lest ICE will come in and sweep them up.  One wonders whether that's what Congress had in mind.  But given this unanimous view of other circuit courts, a view that, with respect, I do not share, I have altered my order to allow him to be held in custody.

Now one of the events which of course could

**GA: 16**

warrant his -- not "warrant," but could permit his deportation, is the determination of the executive. Both the Chief Law Enforcement Officer, the United States Attorney, and ICE, are agencies of the executive. As long as this Court has been privileged to sit here, the United States Attorney has truly been the Chief Law Enforcement Officer of the district.

While it is infrequent, over all my tenure there have been -- it is the undoubted power of the executive. Traditionally the United States Attorneys are appointed by the President of the United States and confirmed by the Senate, that's how important these decisions are. And with that important role comes extraordinary executive responsibility, and among those responsibilities is the authority to dismiss any charges brought by a grand jury. And that's happened. I understand that. That's happened in this session of the court in the 40 years that I have sat here. Never once have I ever criticized the executive when he or she has determined to dismiss charges, nor do I do so in this case.

What I will not permit and what this order prohibits is a system which allows the Office of the United States Attorney to say "Look how we're enforcing the law, the full panoply of rights guaranteed by the

**GA: 17**

Constitution, the involvement of our people in the most robust form of direct democracy known anywhere in the world today, the American jury," when in fact, out the back door, noncitizens are deported, the charges unresolved, charges brought by the American citizenry to be tried by the American citizenry.  It is up to her to make the choice whether to go forward and try these serious charges or it's up to her to dismiss them. That's up to her.  I make no comment on that.  That's entirely up to her.

What is unacceptable to this Court, and should be unacceptable, is this idea that somehow ICE is going to deport people who a grand jury has indicted, and only then, you tell me, only then need this Court either be informed or a motion made.  I won't have it.  It's inappropriate.  None of the cases -- none of the decided cases deal with a situation like this.

And this is not the first time that ICE has behaved in this fashion.  As a matter of fact, when I first came out, to my surprise, nobody in your office even knew that ICE had picked up these people, and it was the second of the two cases I called that morning, both of them were noncitizens.  None of this should be happening.  The choice is properly before the Chief Law Enforcement Officer in this district, the United States

**GA: 18**

Attorney.

We have a system of justice here that is the envy of the entire world.  If she decides not to pursue it in this case, on these charges, that is her business.  She can tell me.  That's the order of the Court.

MR. LOCKHART:  May I respond, your Honor?

THE COURT:  What?  It isn't a debate, that's the order of the Court.  I heard you.

Mr. Hanye?

MR. HANYE:  Thank you, your Honor, I have a brief, but important additional points to make.

One, I want to make sure that I am articulating and advocating for my client's liberty interest here, which is that, as the order currently stands, the Court has ruled that ICE can lawfully detain him, but is preventing his deportation?

THE COURT:  No, no, I've altered it to this extent.  I said, "Give me two days notice that they're going to be deported and then we'll see what motion is filed."

MR. HANYE:  So that was the point I wanted to clarify.

THE COURT:  Right.

MR. HANYE:  That ICE may proceed towards deportation, nothing shall delay the deportation, except

**GA: 19**

the Court has ordered notice?

THE COURT:  I have.  And I expect the notice to come from the United States Attorney.

MR. HANYE:  Yes.  And I would then add, very briefly, that I understand the Court's ruling, but I think the issue is actually ripe for decision right now because it's fait accompli, because the facts have changed since the first time we were here, which is when we didn't know what the outcome of the immigration proceedings were going to be, and we effectively know that now.  I just wanted to make that argument.

THE COURT:  Right, you've made the argument.

MR. LOCKHART:  May I be heard?

THE COURT:  I'll answer any questions, yes.

MR. LOCKHART:  Okay.

So in our opinion, your Honor, nothing in what you've just said points to any sort of statutory or constitutional authority from removing a defendant until such time as an event occurs in a criminal case.  You've pointed to just policy considerations --

THE COURT:  You've made -- you've made that point.

MR. LOCKHART:  Okay, so I -- could I just ask, are you denying ECF 48, the motion?

THE COURT:  I ruled on it.

MR. LOCKHART:  Oh, okay.  So you have denied it?

**GA: 20**

THE COURT:  No, no, I've now altered and said "Give me two days notice and I'll see if you make a motion to dismiss," if the United States Attorney makes a motion to dismiss.

MR. LOCKHART:  Right, and we're not going to be doing that, your Honor, because you don't have the power to make us -- to force us to file a 48(a) dismissal motion prior to removal.

THE COURT:  I think, in these unique circumstances, this is an appropriate exercise of the Court's power.  Thank you.

All right.  You can call the next case.

(Ends, 11:00 a.m.)

**GA: 21**

| 05/29/2025 | 49 | Electronic Clerk's Notes for proceedings held before Judge William G. Young: Status Conference as to Jose Miguel Pena de la Cruz held on 5/29/2025. The Court sets the case tentatively for trial on 9/29/2025 09:00 AM in Courtroom 18 (In person only) before Judge William G. Young. Final Status Conference set for 9/2/2025 02:00 PM in Courtroom 18 (In person only) before Judge William G. Young. Dispositive motions are due by August 12, 2025, government's response due by August 26, 2025. Time will be excluded under the Speedy Trial Act from the date of indictment until 9/29/2025 as stated on the record. The defendant was brought to Court today although his presence was not required for an initial status conference. The Court clarifies its order-- defendants in ICE custody shall be brought to Court only for proceedings where their presence is required. The parties wish to be heard on # 48 Motion for the Court to further modify its May 8 standing order. Court hears argument. Defendant joins in request that Court lift the order that bars the defendant's deportation. The Court orders : ICE may proceed with the defendant's deportation and must give the Court two business day's notice of the impending deportation. (Attorneys present: Donald Lockhart for the government and Joshua Hanye for defendant. )Court Reporter Name and Contact or digital recording information: Richard Romanow at rhr3tubas@aol.com. (KB) (Entered: 05/29/2025) |
| --- | --- | --- |

**GA: 22**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE MIGUEL PENA DE LA CRUZ,<br><br>Defendant | CRIMINAL No. 25-10106-WGY |

**GOVERNMENT'S NOTICE**
**OF IMPENDING REMOVAL OF DEFENDANT**

Pursuant to the Court's order at ECF 49, this is the government's notice of defendant's

impending removal from the United States, which is currently expected to occur on Tuesday, June

24, 2025. The government notes that the Court has not ruled on its unopposed motion [ECF 54] to

clarify that order and related orders and to vacate the May 8, 2025 standing order, which remains

posted on the Session's website as of this filing. This notice represents the government's good faith

effort to comply with the Court's orders despite the unresolved motion.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: /s/ Donald C. Lockhart
Donald C. Lockhart
Chief of Appeals
Assistant United States Attorney
(617) 748-3193

June 23, 2025   Pursuant to this Court's order in this case, the government has properly given notice that it will deport Mr. de la Cruz on Tuesday, June 24, 2025. Mr. de la Cruz presently has serious pending unresolved criminal charges facing him in this District. In light of the previous litigation concerning this defendant, the Court treats this notice functionally as a motion to dismiss the pending indictment without prejudice in the interests of justice without prejudice. The government has the power to dismiss a criminal case for any reason or no reason. As this Court has previously articulated herein, it is sophistry to both claim to be fully enforcing the law while at the same time quietly deporting a defendant to increase [...] limit upon Mr. de la Cruz deportation, the indictment against him [...] with prejudice. William G. Young District Judge

**GA. 23**

| 06/23/2025 | 56 | Judge William G. Young: ORDER entered. as to Jose Miguel Pena de la Cruz re 55 Notice (Other) filed by USA<br>Pursuant to this Court's order in this case, the government has properly given notice that it will deport Mr. de la Cruz on Tuesday, June 24, 2025. Mr. de la Cruz presently has serious pending unresolved criminal charges facing him in this District. In light of the previous litigation concerning this defendant, the Court treats this notice functionally as a motion to dismiss the pending indictment without prejudice in the interests of justice. The government has the power to dismiss a criminal case for any reason or no reason. As this Court has previously articulated herein, it is sophistry to both claim to be fully enforcing the law while at the same time quietly deporting a defendant to increase ICEs monthly catch limit. Upon Mr. de la Cruz deportation, the indictment against him is dismissed with prejudice. (Sonnenberg, Elizabeth) (Entered: 06/23/2025) |

**GA: 24**