# United States Court of Appeals
## For the First Circuit

---

No. 25-1648

UNITED STATES,

Appellant,

v.

JOSE MIGUEL PENA DE LA CRUZ,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

---

Before

Montecalvo, Lipez, and Kayatta,
Circuit Judges.

---

Donald C. Lockhart, Assistant United States Attorney, with whom Leah B. Foley, United States Attorney, was on brief, for appellant.

Judith H. Mizner, Assistant Federal Public Defender, for appellee.

---

September 11, 2026

---

**MONTECALVO, <u>Circuit Judge</u>.** On March 26, 2025, Jose Miguel Pena de la Cruz was indicted in the U.S. District Court for the District of Massachusetts for money laundering conspiracy and aiding and abetting money laundering.[1] After he was arraigned, and after a magistrate judge ordered his release from criminal custody on conditions pursuant to the Bail Reform Act, Pena de la Cruz was taken into Immigration and Customs Enforcement (ICE) custody. On June 19, 2025, the government notified the district court that Pena de la Cruz, a citizen of the Dominican Republic, would be imminently deported. The district court, treating that notice as a motion to dismiss Pena de la Cruz's criminal indictment without prejudice, entered an order on June 23, 2025 (the "June 23rd Order"), dismissing the indictment <u>with prejudice</u> upon Pena de la Cruz's deportation.[2] The next day, Pena de la Cruz was deported. The government now appeals the district court's order dismissing the indictment with prejudice. Because we agree that the dismissal with prejudice constituted an abuse of discretion, we **<u>vacate</u>** that order and **<u>remand</u>** to the district court with

---

[1] The grand jury returned an indictment charging Pena de la Cruz with one count of money laundering conspiracy under 18 U.S.C. § 1956(h) and three counts of aiding and abetting money laundering under 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2, in the amounts of $130,040, $70,140, and $139,900, respectively.

[2] Dismissal of an indictment with prejudice bars future prosecution of the alleged counts, whereas dismissal without prejudice generally allows the government to recharge the defendant with those same counts in the future. <u>See generally</u> <u>Dismissal</u>, <u>Black's Law Dictionary</u> (12th ed. 2024).

instructions to enter an order dismissing the indictment without prejudice. We further **vacate** the district court's standing order at issue in this case, in both its original and modified forms.

## I.

We begin with an overview of the events leading up to the district court's June 23rd Order. During a status conference on May 1, 2025, the government first informed the district court that Pena de la Cruz had been taken into ICE custody and was detained in New Hampshire. In response, defense counsel made an oral motion to dismiss Pena de la Cruz's indictment with prejudice, arguing that his detention, and his likely upcoming deportation, would interfere with his Sixth Amendment rights as a criminal defendant to seek assistance of counsel, testify in his own defense, and present his case at trial. The government responded that in a similar case where a defendant had been moved to ICE custody out-of-state but had not yet been deported, that individual had been returned to Massachusetts to complete criminal proceedings; the government suggested that the same could be done with Pena de la Cruz. The district court ordered Pena de la Cruz

"not to be deported" and instructed the government to respond in writing to Pena de la Cruz's motion for dismissal with prejudice.[3]

On May 8, 2025, the district court judge, in a standing order governing all criminal cases before that judge, ordered that defendants were not to be subject to ICE custody until one of three things occurred: 1) the government moved for dismissal of the pending charges with prejudice and the district court allowed the motion, 2) a jury acquitted the defendant of the charges, or 3) judgment was entered following a trial or plea.

Two weeks later, on May 22, 2025, the district court issued a new order in Pena de la Cruz's case in which it modified its recently issued standing order to "permit . . . ICE detention" so long as detainees were not deported until their criminal case had concluded. The court also ordered ICE to "facilitate the appearance" of detainees "for all court appearances where the criminal defendant is permitted to be present."

[3] In the government's later written opposition to Pena de la Cruz's motion to dismiss his indictment with prejudice, the government argued that because Pena de la Cruz had not yet been deported, his claim was "not ripe." The government also contested defense counsel's claims concerning prejudice to Pena de la Cruz's Sixth Amendment rights, arguing that Pena de la Cruz could not demonstrate that being detained in neighboring New Hampshire would "significantly prejudice him," where his detention did not inhibit his ability to "receive calls from his lawyer" and "review evidence." Following the government's written opposition, Pena de la Cruz moved to withdraw his earlier oral motion to dismiss with prejudice as "not yet ripe."

On May 29, 2025, the district court held another status conference at which ICE facilitated Pena de la Cruz's appearance, in compliance with the court's earlier order.[4] At the status conference, defense counsel informed the district court that Pena de la Cruz had "a final order of removal" in his immigration proceedings and did not intend to challenge that order. The district court noted that the only remaining issue, then, was whether dismissal of the criminal charges against Pena de la Cruz would be entered with or without prejudice.

In considering that issue, the district court expressed concern over the government's efforts to deport Pena de la Cruz after the United States Attorney had exercised its prosecutorial discretion to indict him. The district court noted that law enforcement had expended time and resources to investigate the case, grand jury members had convened and returned an indictment on serious money laundering charges against him, and a magistrate judge had carefully considered the terms of Pena de la Cruz's release on conditions under the Bail Reform Act. The court did not resolve whether dismissal would be with or without prejudice at that time but ordered the government to provide "two days notice" of any plans to deport Pena de la Cruz, stating, "then

[4] At that status conference, the district court clarified that ICE need only bring defendants to court for hearings where their attendance was "required," rather than "permitted."

we'll see what motion is filed." The district court confirmed that ICE could "proceed towards deportation" so long as notice was provided to the court.

On June 19, 2025, the government, in compliance with the district court's oral order at the May 29 status conference to notify the district court of any plans to deport Pena de la Cruz, filed a "Notice of Impending Removal of Defendant." The notice indicated that Pena de la Cruz's deportation was scheduled for June 24, 2025.

Four days later, the district court entered its June 23rd Order that we introduced earlier. This six-sentence order began by noting that the government had "properly given notice" to the court of Pena de la Cruz's upcoming deportation, in compliance with the court's earlier oral order. The court treated the government's removal notice "as a motion to dismiss the pending indictment without prejudice," and registered its concern about Pena de la Cruz's "serious pending unresolved criminal charges" and what the court perceived as tension between the government's "claim to be fully enforcing the law" while simultaneously "quietly deporting a defendant." The district court concluded: "[u]pon [Pena de la Cruz's] deportation," which indeed occurred the next day, "the indictment against him is dismissed with prejudice." This timely appeal followed.

## II.

"When the district court dismisses an indictment or a portion thereof, we review [its] conclusions of law de novo, factual findings for clear error, and the ultimate ruling for abuse of discretion." United States v. Lopez-Matias, 522 F.3d 150, 153 (1st Cir. 2008) (first citing United States v. Kelley, 402 F.3d 39, 41 (1st Cir. 2005); then citing United States v. Maxwell, 351 F.3d 35, 40 (1st Cir. 2003)).

## III.

The question before us on appeal is whether the district court abused its discretion in dismissing Pena de la Cruz's indictment with prejudice under Rule 48(a) of the Federal Rules of Criminal Procedure. To answer that question, we will look to the June 23rd Order dismissing Pena de la Cruz's indictment and the district court's standing order, as modified, in more detail. But before considering the specifics of this case, we provide some background about Rule 48(a), which governs dismissal of criminal indictments "[b]y the Government."[5] Although Rule 48(a) does not directly address when an indictment may be dismissed with

[5] In addition to providing for dismissal "[b]y the Government" in Rule 48(a), Rule 48(b) provides for dismissal "[b]y the Court" in certain circumstances of "unnecessary delay." Fed. R. Crim. P. 48(a), (b). As a threshold matter, because no circumstances of "unnecessary delay" are raised here, and because the government does not dispute that its notice of Pena de la Cruz's pending removal functioned as a motion to dismiss without prejudice under Rule 48(a), our analysis falls squarely under Rule 48(a).

prejudice, in establishing the broader requirements for dismissal, it informs our analysis of the narrower prejudice question before us. See United States v. Adams, 777 F. Supp. 3d 185, 214-15 (S.D.N.Y. 2025) (explaining that courts have often "looked to the same principles that motivate [Rule 48(a)'s] 'leave of court' requirement" when analyzing a court's "discretion to dismiss with prejudice under Rule 48(a)"). We begin with Rule 48(a).

**A.**

Rule 48(a) provides for dismissal of criminal charges as follows:

> The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.

Fed. R. Crim. P. 48(a). The first three words of Rule 48(a), "[t]he government may," vest the power to file a motion to dismiss an indictment with the government. Id. Simultaneously, Rule 48(a)'s reference to "with leave of court," which we refer to as the judicial leave requirement, reserves some role for the court. See id. The precise extent of the executive and judicial roles reflected in Rule 48(a) and how those respective powers bear on when dismissal may be entered with prejudice lie at the heart of this appeal. Faced with an absence of direct authority on such issues in this circuit, we look for guidance to cases from our sister circuits that have more squarely addressed Rule 48(a). Cf.

Dimova v. Holder, 783 F.3d 30, 40 (1st Cir. 2015) (considering decisions of sister circuits).

The D.C. Circuit, in United States v. Ammidown, explained that the court "does not have primary responsibility" in dismissals under Rule 48(a); rather, the court observed, the judiciary's role is a more limited one, focused on "guarding against abuse of prosecutorial discretion." 497 F.2d 615, 620 (D.C. Cir. 1973). Similarly, in United States v. Cowan, the Fifth Circuit explained that Rule 48(a)'s judicial leave requirement was "intended to modify and condition" the Executive's power "by erecting a check on the abuse of Executive prerogatives," marking a shift from the prior common-law rule under which prosecutors had near "absolute power" to dismiss cases at any time before jury empanelment. 524 F.2d 504, 505, 513 (5th Cir. 1975); see also Fed. R. Crim. P. 48(a) advisory committee's note to 1944 adoption 1 (explaining that the common-law rule had allowed prosecutors to "enter a nolle prosequi in [their] discretion, without any action by the court"). But in so conditioning the Executive's power, the Fifth Circuit clarified, Rule 48(a) was not meant "to confer on the Judiciary the power and authority to usurp or interfere with the good faith exercise of the Executive power to take care that the laws are faithfully executed." 524 F.2d at 513. Rather, it concluded, the government's discretion to terminate pending

charges "should not be judicially disturbed unless clearly contrary to manifest public interest." Id.

These cases reflect an important baseline principle: Rule 48(a) reserves a role for the court in dismissals, but that role is narrowly circumscribed. The Supreme Court acknowledged as much in Rinaldi v. United States, noting that Rule 48(a)'s judicial leave requirement "vest[s] some discretion" with the judiciary, while leaving the exact scope of that discretion undefined. 434 U.S. 22, 29 n.15 (1977). Although the Court did not weigh in on Rule 48(a)'s judicial leave requirement in great detail in Rinaldi, it clarified that "the principal object" of this requirement is "to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." Id.; see also United States v. Suazo, 14 F.4th 70, 75 (1st Cir. 2021) (noting that "Rule 48(a) protects [a] defendant[] from prosecutorial harassment"). And, central to our discussion, the Court left open the possibility that certain limited circumstances -- those "clearly contrary to the public interest" -- might sometimes warrant denial of leave of court under Rule 48(a). See Rinaldi, 434 U.S. at 29 n.15 (citing Ammidown and Cowan, the Court noted that Rule 48(a) has "been held to permit the court to deny a Government dismissal motion to which

the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest").

Building from that premise, post-Rinaldi, circuit courts have adopted varying approaches for determining which circumstances are "clearly contrary to the public interest" such that judicial leave may be withheld under Rule 48(a). See id.; Adams, 777 F. Supp. 3d at 210 (discussing approaches across circuits). The arguments raised in this case, in part, require us to clarify our own approach in the related context of determining what circumstances so clearly contravene the public interest such that dismissal may be with prejudice. Understanding that the same limited discretion afforded to courts under Rule 48(a) to deny dismissals when "prompted by considerations clearly contrary to the public interest" also allows courts to determine those narrow circumstances when dismissal may be with prejudice, we now turn to the parties' arguments. Cf. Rinaldi, 434 U.S. at 29 n.15; United States v. Raineri, 42 F.3d 36, 43 (1st Cir. 1994) (discussing the court's authority, under the circumstances of the case, to "order that the dismissal be modified to reflect that it is a dismissal with prejudice").

**B.**

On appeal, the government argues that the district court erred in dismissing Pena de la Cruz's indictment with prejudice. It asserts that the district court, through its modified standing

order, "create[d] a system" requiring the government to notify the court of a defendant's pending removal and triggering "automatic dismissal [of the defendant's indictment] with prejudice" "upon such notice and removal." Such a system, the government contends, runs contrary to the default rule that dismissals under Rule 48(a) are typically "without prejudice" and to case law limiting dismissal with prejudice to instances where the defendant demonstrates prosecutorial harassment or bad faith, which the government claims did not occur here.

Pena de la Cruz argues that the court did not abuse its discretion because case-specific circumstances supported dismissal of the indictment with prejudice. Pena de la Cruz maintains that the relevant considerations bearing on dismissal with prejudice are not as limited as the government contends; rather, he asserts, courts may evaluate "the public interest in the fair administration of justice and the preservation of the integrity of the courts" when determining whether to dismiss an indictment with prejudice. And under that rubric, Pena de la Cruz argues, the district court properly weighed the "societal interests in prosecuting" the serious charges against him, the grand jury's involvement in charging him, and how deportation would affect his "rights to counsel and a fair trial."

We conclude that the circumstances here did not reach the high threshold required to warrant dismissal with prejudice.

The district court thus abused its discretion in dismissing Pena de la Cruz's indictment with prejudice. We also hold that the district court's modified standing order improperly conditioned Pena de la Cruz's removal on the dismissal of his indictment with prejudice, and we accordingly vacate the standing order in its original form and as modified.

To begin, we explain the proper standard for determining whether dismissal will be entered with or without prejudice. The government correctly asserts that dismissals under Rule 48(a) are "[c]ustomarily" without prejudice, Raineri, 42 F.3d at 43, and that prosecutors are afforded a "presumption of good faith," Suazo, 14 F.4th at 75 (citation modified). Further, the government's argument that dismissal with prejudice is typically limited to instances where the defendant has demonstrated prosecutorial bad faith finds persuasive support in decisions from the Fourth, Fifth, and Eighth circuits. Those circuits, in determining which circumstances are so "clearly contrary to the public interest" such that judicial leave may be withheld under Rule 48(a), "treat[] prosecutorial bad faith and the public interest as two sides of the same coin." Adams, 777 F. Supp. 3d at 210; cf. United States v. Smith, 55 F.3d 157, 159 (4th Cir. 1995) (holding that a "motion [to dismiss] that is not motivated by bad faith is not clearly contrary to manifest public interest"); United States v. Bernard, 42 F.4th 905, 909 (8th Cir. 2022) (holding that a dismissal clearly

contravenes the public interest only where the prosecutor "had an illegitimate motive rising to the level of bad faith"); United States v. Hamm, 659 F.2d 624, 630 (5th Cir. 1981) (allowing courts to deny motions to dismiss only where prosecutors are "clearly motivated by considerations other than [their] assessment[s] of the public interest").

Pena de la Cruz, in contrast, points to a single circuit court decision from the Tenth Circuit, United States v. Carrigan, to support his argument that Rule 48(a) allows courts deciding dismissal motions "to consider the public interest in the fair administration of criminal justice and the need to preserve the integrity of the courts." 778 F.2d 1454, 1463 (10th Cir. 1985) (emphasis added). Notably, the underlined language that Pena de la Cruz relies on from Carrigan is cabined by language reinforcing (1) that Rule 48(a)'s primary purpose is "to protect a defendant from prosecutorial harassment," and (2) that courts must usually grant dismissal unless "'clearly contrary to manifest public interest.'" Id. (quoting Cowan, 524 F.2d at 513).[6] Ultimately,

[6] It bears mentioning that Carrigan was not decided under Rule 48(a), but rather, under Rule 11(e), which governs guilty pleas and nolo contendere pleas. 778 F.2d at 1463; see Fed. R. Crim. P. 11(e). Thus, Carrigan provides no further explanation nor application of the underlined language that Pena de la Cruz relies on so heavily.

while Pena de la Cruz urges us to afford great weight to this sentence from a single out-of-circuit case, we are not persuaded.

Our own case law in United States v. Raineri, while not definitively answering when dismissal may be entered with prejudice, counsels courts to exercise their limited discretion under Rule 48(a) with restraint and directs us towards a more circumscribed consideration of the public interest that is closely tied to protecting the defendant from patent unfairness. In Raineri, a defendant who pled guilty to three criminal counts in relation to his alleged involvement in an armed robbery later sought to withdraw his guilty plea, alleging, in part, that he had been misinformed of the penalties for the third count.[7] 42 F.3d at 38-39. The government, seeking to "remedy any possible defects," moved to dismiss that count. Id. at 39. The district court granted the dismissal and denied the defendant's motion to withdraw his guilty plea. Id. at 39, 43. On appeal, Raineri asserted that the dismissal -- which was assumed to have been

[7] Indeed, Raineri was erroneously advised that this count held a "maximum of 10 years' imprisonment and a $10,000 fine" when in fact, due to his criminal history, he faced a "mandatory minimum of 15 years' imprisonment" and a maximum fine of $25,000. Raineri, 42 F.3d at 40.

without prejudice -- "undercut [his] plea agreement," and argued for withdrawal of his guilty plea. Id. at 42-43.

In our decision, we noted that Raineri pled guilty under the assumption that "there [would] be no future trial on any of the[] counts" he was charged with, but because his third count had been dismissed without prejudice, the possibility remained that he could be reindicted on that count in the future. Id. at 43. To remedy this obvious and severe "threat of unfairness," we recognized that this court had authority to "itself order" modification of the dismissal "to reflect that it [was] with prejudice." Id. But, acknowledging that "the choice to forego permanently a prosecution is ordinarily made by the executive branch," we instead remanded to the district court so that the government could elect to either "accept a dismissal with prejudice" or "surrender the guilty pleas and give the defendant [a] trial." Id.

Drawing from Raineri, we hold today that in determining which circumstances are so "clearly contrary to the public interest," cf. Rinaldi, 434 U.S. at 29 n.15, so as to warrant the entry of dismissal with prejudice, courts may consider those limited circumstances where dismissal without prejudice would raise a patent threat of unfairness to the defendant. See Raineri, 42 F.3d at 43. Such circumstances include prosecutorial harassment and prosecutorial bad faith. We leave open the possibility that

other circumstances might also raise such a clear and serious threat of unfairness to the defendant so as to permit a court to enter dismissal with prejudice under Rule 48(a). See id. However, we caution that such circumstances are exceedingly narrow and thus courts must practice careful restraint in exercising their constrained discretion under Rule 48(a). See id.

### C.

Under our clarified standard, we return to the specifics of this case. As we will explain, because the circumstances here are not "clearly contrary to the public interest" under the rubric we just laid out, we conclude that the district court abused its discretion under Rule 48(a) in dismissing Pena de la Cruz's indictment with prejudice.

Recall that the district court's June 23rd Order dismissing Pena de la Cruz's indictment with prejudice upon his deportation noted that the government had "properly given notice" of Pena de la Cruz's pending deportation in compliance with the court's earlier oral order. Our review of the record confirms that the government respected the court's orders to timely notify the court of Pena de la Cruz's upcoming deportation and to facilitate his appearance at proceedings, and Pena de la Cruz provides no indication that the government defied other court orders or otherwise acted in bad faith.

Additionally, the June 23rd Order acknowledged the "serious pending unresolved criminal charges" against Pena de la Cruz, apparently as support for dismissal with prejudice. But the serious nature of those charges, which totaled over $340,000 in alleged laundered funds, tends to weigh in favor of dismissal without prejudice, such that these charges might be pursued in the future should Pena de la Cruz later return to the United States. As time passes following Pena de la Cruz's removal from the United States, of course, circumstances may arise that could severely disadvantage his defense if he is reindicted in the future -- for example, evidence supporting his defense may go stale -- but importantly, should Pena de la Cruz return to the United States in the future and be reindicted, all such arguments will be available to him at that time. We see no present and obvious threat of unfairness to Pena de la Cruz.

Finally, we look to the June 23rd Order's explanation for why the indictment against Pena de la Cruz was dismissed with prejudice. In a single sentence, the district court explained that, in its view, the government's "claim to be fully enforcing the law" was incompatible with the government's simultaneous efforts to "quietly deport" Pena de la Cruz. This exceedingly brief explanation is insufficient to overcome the default presumption that dismissal under Rule 48(a) is without prejudice. But even looking beyond the immediate text of the June 23rd Order

and at concerns raised in the district court's earlier exchanges with the parties, we cannot conclude that the circumstances here were so "clearly contrary to the public interest" to warrant dismissal with prejudice.

In status conferences leading up to the June 23rd Order, the district court expressed concern that Pena de la Cruz's deportation following his indictment would undermine the integrity of the criminal justice system by undercutting the time and resources expended by law enforcement in investigating Pena de la Cruz's case, by the grand jury in returning an indictment against him, and by the magistrate judge in issuing orders concerning his release. Concerns for the careful stewarding of these entities and individuals' time and resources are important, but such considerations alone reflect neither prosecutorial harassment nor bad faith, nor do they otherwise raise a patent risk of unfairness to Pena de la Cruz such that dismissal without prejudice was "clearly contrary to the public interest." Where the collective circumstances here did not meet that high standard, the presumption of dismissal without prejudice prevails.[8] Thus, we hold that the

[8] In addition to the district court's concerns about the time and resources expended by law enforcement, the grand jury, and the magistrate judge, Pena de la Cruz contends that the district court "was also informed of the impact of deportation on [Pena de la Cruz's] rights to counsel." But although the district court was "informed" of Pena de la Cruz's arguments that his Sixth Amendment rights as a criminal defendant would be impeded by his immigration detention and likely removal, we find no indication that this was

district court abused its discretion in dismissing Pena de la Cruz's indictment with prejudice.

Finally, the government also asks us to vacate the original and modified versions of the district court's standing order. Recall that the May 8, 2025 standing order prohibited ICE custody "until" one of three events occurred in the defendant's criminal case: dismissal with prejudice, acquittal, or judgment following a trial or plea. And the district court's May 22, 2025 order modified the standing order to allow for ICE detention but prohibited ICE detainees from being removed until their criminal proceedings concluded "in the manner set forth" in the standing order. The standing order expressly applies to all criminal cases assigned to the district court judge in this case. And the district court's June 23rd Order plainly incorporated and implemented the modified standing order by treating the government's "Notice of Impending Removal of Defendant" as grounds

---

among the considerations motivating the district court's order dismissing the indictment with prejudice. The district court did not mention such concerns in the June 23rd Order itself nor in the status conferences leading up to that order. In any event, Pena de la Cruz failed to substantiate his claim of prejudice to his Sixth Amendment rights. Indeed, he did not counter the government's countervailing arguments in its written opposition that he had the ability to consult counsel and review evidence while in ICE custody, and he later retracted his initial oral motion to dismiss with prejudice for want of ripeness.

to dismiss the indictment with prejudice. We therefore agree with the government that we should review the standing order.[9]

By operation of the standing order and its modified version, absent acquittal or judgment of conviction, removal of an indicted defendant is conditioned by the court on dismissal of the indictment, invariably, "with prejudice." But for the reasons we have explained, the district court cannot categorically order dismissal of an indictment with prejudice. Instead, it must conclude that the individual case is one in which dismissal without prejudice would raise a patent threat of unfairness to the defendant. The standing order thus exceeds the district court's limited discretion under Rule 48(a), and we accordingly vacate the standing order in its original form and as modified.

**IV.**

For the reasons stated herein, we **vacate** the district court's June 23rd Order dismissing the indictment against Pena de

[9] The government raises another argument that we need address only briefly: It asserts that the district court's ruling is "undermine[d]" by the holdings of seven other circuits, which, it alleges, "have held that ICE has authority to detain and remove federally-indicted defendants regardless of the pendency of the federal criminal case and irrespective of release determinations made under the [Bail Reform Act]." The government's statement is only partially correct. Concerning detention, those seven circuits have indeed held that the detention-and-release provisions of the Bail Reform Act and the Immigration and Nationality Act do not conflict. See, e.g., United States v. Lett, 944 F.3d 467, 469 (2d Cir. 2019). But that has no bearing here, where the district court modified its standing order to no longer prohibit ICE from detaining noncitizen defendants.

la Cruz with prejudice and **remand** to the district court with instructions to enter an order dismissing the indictment without prejudice. We further **vacate** the district court's May 8, 2025 standing order and its May 22, 2025 modification to the standing order, with instructions to remove the standing order from the district court's website.